IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:06-CV-300-D

| | |
|---|---|
| STATE OF NORTH CAROLINA,<br>on Relation of JAMES E. LONG,<br>COMMISSIONER OF INSURANCE OF<br>NORTH CAROLINA AND LIQUIDATOR<br>of LONDON PACIFIC LIFE & ANNUITY<br>COMPANY,<br><br>      Plaintiff,<br><br>v.<br><br>DAVID E. BLACKBURN, and<br>BLACKBURN INSURANCE AGENCY, INC.,<br><br>      Defendants. | **ORDER** |

Defendants David E. Blackburn ("David Blackburn") and Blackburn Insurance Agency, Inc. ("Blackburn Insurance") move to transfer this action to the United States District Court for the Western District of Oklahoma. For the reasons discussed below, defendants' motion is granted.

I.

On July 7, 2006, plaintiff James E. Long ("Commissioner") filed suit in Wake County Superior Court "in his capacity as liquidator of London Pacific Life & Annuity Company." Compl. ¶ 1. London Pacific is a North Carolina insurance company. Id. ¶ 2. On August 6, 2002, the Wake County Superior Court entered an order of rehabilitation and appointed the Commissioner as rehabilitator of London Pacific. Id. ¶ 6; State of North Carolina ex rel. Long v. London Pac. Life & Annuity Co., No. 02-CVS-10454 (Wake County Super. Ct. Aug. 6, 2002).[1] On July 12, 2004, the

---

[1] The court takes judicial notice of the orders in action 02-CVS-10454 in Wake County Superior Court. See Fed. R. Evid. 201; Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989).

Wake County Superior Court entered an order of liquidation and appointed the Commissioner as liquidator of London Pacific. As liquidator, the Commissioner is "vested with title to all assets of London Pacific and is further authorized to collect any and all debts owed to London Pacific." Compl. ¶ 7; London Pac. Life & Annuity Co., No. 02-CVS-10454 (Wake County Super. Ct. July 12, 2004).

London Pacific had a marketing company known as London Pacific Insurance Marketing Company ("London Pacific Marketing"). Compl. ¶ 9. London Pacific Marketing was a California corporation. Id. ¶ 8. London Pacific Marketing entered into a contract with Blackburn Insurance Agency naming Blackburn Insurance an authorized London Pacific insurance agent. Id. ¶ 17. David Blackburn is the president of Blackburn Insurance and owns a controlling interest therein. Id. ¶ 20. Plaintiff contends that David Blackburn is the alter ego of Blackburn Insurance. Id. ¶ 21.

According to count one of the complaint, "[David] Blackburn received one or more commission advances which Defendant [David] Blackburn and London Pacific agreed would be treated as agent debit balances." Id. ¶ 18. London Pacific Marketing assigned to London Pacific its interest in this debt, which allegedly totals $100,555.83, plus interest. Id. ¶¶ 23, 25. The Commissioner seeks to recover this alleged debt. Id. ¶ 27. Oklahoma law appears to govern this claim.

In count two, the Commissioner alleges that London Pacific Marketing entered a contract with Oklahoma citizen Michael Hentges ("Hentges") concerning his services as a London Pacific agent. Id. ¶ 29. Blackburn Insurance allegedly entered into a written guaranty with London Pacific whereby Blackburn Insurance guaranteed payment of this alleged debt. Id. ¶ 35. According to the complaint, Hentges owes London Pacific $100,762.71, plus interest. Id. ¶ 33. The Commissioner seeks to recover this alleged debt as well. Id. ¶ 41. California law appears to govern this claim.

As to the first debt, defendants admit that London Pacific provided them with a $100,000 credit line. Answer ¶ 12. However, they allege that the debt was nonrecourse, and that London Pacific must look only to the collateral to collect. Id. As to the second debt, defendants admit that David Blackburn's brother Kyle Blackburn agreed to guarantee Hentges' repayment of a $20,000 loan from London Pacific. Id. ¶ 24. However, they allege that Hentges repaid this loan, thereby extinguishing Kyle Blackburn's guarantee. Id. They further allege that Kyle Blackburn revoked his guarantee when London Pacific requested that he back future advances to Hentges, and that neither he, his brother David Blackburn, nor Blackburn Insurance are responsible for any unsatisfied London Pacific advances to Hentges. See id.

Defendants previously challenged personal jurisdiction, and the Commissioner challenged subject matter jurisdiction. This court found both personal jurisdiction and subject matter jurisdiction. See North Carolina ex rel. Long v. Blackburn, 492 F. Supp. 2d 525, 535 (E.D.N.C. 2007).

Defendants now move to transfer this action to the United States District Court for the Western District of Oklahoma[2] pursuant to 28 U.S.C. § 1404(a). That section provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Defendants argue that all the issues presented here result from actions that Oklahoma residents David

---

[2] Defendants actually request transfer to the "District of Oklahoma." See Defs.' Mot. to Transfer Venue 2; Defs.' Br. in Supp. of Mot. to Transfer Venue 11. Since both defendants are located in Oklahoma City, Oklahoma, the court presumes that defendants desire venue in the Western District of Oklahoma. See David Blackburn Aff. ¶¶ 2–3 (noting that both David Blackburn and Blackburn Insurance are located in Oklahoma City); 28 U.S.C. § 116(c). Plaintiffs assume the same. See Pl.'s Mem. in Opp'n to Defs.' Mot. to Transfer Venue 1 (describing question presented as whether "to transfer venue from this Court to the Federal Court for the Western District of Oklahoma").

3

Blackburn, Kyle Blackburn, Blackburn Insurance, and Michael Hentges took in Oklahoma. See Defs.' Br. in Supp. of Mot. to Transfer Venue 3–4. Defendants note that Blackburn Insurance is an Oklahoma corporation, and that all of its documents are located in Oklahoma. See id. at 7. Defendants also argue that Hentges (a non-party) will not testify willingly, and that transfer to a court with subpoena power over him is especially important because the jury should be able to observe this important witness in person. Id. at 8–9; Defs.' Reply in Supp. of Mot. to Transfer Venue 9–10.

Plaintiff responds that this litigation involves a North Carolina official acting to recover the debts of an insolvent North Carolina insurance company that maintained all of its records in North Carolina. Pl.'s Mem. in Opp'n to Defs.' Mot. to Transfer Venue 9. Plaintiff accordingly argues that it would be an undue burden for him to litigate in Oklahoma. Id. at 7. Finally, plaintiff notes that Hentges could testify at trial by deposition. Id. at 9.

II.

A district court has broad discretion when considering a motion to transfer. See, e.g., 28 U.S.C. § 1404(a); Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991); Jenkins v. Albuquerque Lonestar Freightliner, LLC, 464 F. Supp. 2d 491, 493 (E.D.N.C. 2006). Courts sometimes apply any of several multi-factor tests in deciding motions to transfer. See, e.g., Hardee's Food Sys., Inc. v. Rosenblatt, 44 F. Supp. 2d 767, 770 (E.D.N.C. 1998). The court takes guidance from these factor-based tests; however, most of the factors commonly mentioned are either neutral or irrelevant here, and a motion to transfer is a fluid inquiry that turns on the unique facts and circumstances of each case. See, e.g., Stewart, 487 U.S. at 29; Jenkins, 464 F. Supp. 2d at 493–44.

The Commissioner forcefully argues that his choice of forum deserves great deference, and may only be disturbed if the balance of equities strongly favors transfer. See, e.g., Collins v.

4

Straight, Inc., 748 F.2d 916, 921–22 (4th Cir. 1984) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1946), superseded by statute, Pub. L. No. 80-733, § 1404(a), 62 Stat. 869, 937 (1948)). The Commissioner accordingly maintains that transfer in this case, where he has filed in his home forum, would do nothing more than impermissibly shift the burden of inconvenience. See, e.g., JTH Tax, Inc. v. Lee, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007) ("The movant must also demonstrate that transfer does more than merely shift the inconvenience to the other party." (quotation omitted)).

The court gives due weight to the Commissioner's choice of forum, but finds that the interest of justice merits transfer of this action. See, e.g., Lynch v. Vanderhoef Builders, 237 F. Supp. 2d 615, 617 (D. Md. 2002). Although North Carolina does have a connection to this controversy, the real dispute centers on two contracts that were entered into in Oklahoma and were to be performed in Oklahoma. Oklahoma law governs one of the contracts, and California law governs the other contract. Many of the witnesses who would testify at trial appear to be from Oklahoma, and a trial there would be more convenient and less costly than a trial in North Carolina. Venue is proper in the United States District Court for the Western District of Oklahoma. See 28 U.S.C. § 1391(a). Moreover, that this court cannot compel Hentges' attendance at trial[3] is of particular importance on these facts. See, e.g., 15 Charles Alan Wright, et al., Federal Practice & Procedure § 3851 (3d ed. 2007) ("Often cited as the most important factor . . . is the convenience of witnesses, most particularly nonparty witnesses who are important to the resolution of the case.").

Although the Commissioner contends that Hentges could simply testify at trial by deposition,

---

[3] Under Federal Rule of Civil Procedure 45(c)(3)(ii), a subpoena which purports to require a witness who is neither a party nor an officer of a party to travel more than 100 miles will be quashed, unless the subpoena issues from a court within the witness' own state. Hentges is neither a party nor an officer of a party, and a subpoena would not satisfy the rule's geographic requirements.

the court agrees with defendants that Hentges' testimony is particularly important to resolution of the Commissioner's second claim, and that the jury should be able to personally observe Hentges' testimony. See Gulf Oil, 330 U.S. at 511 ("Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is . . . not satisfactory to court, jury or most litigants."). Contrary to the Commissioner's argument, transfer would do more than merely shift the burden of inconvenience to him, because Hentges' testimony is equally important to the Commissioner's case. See Pl.'s Mem. in Opp'n to Defs.' Mot. to Transfer Venue Attach. 1. (Pl.'s Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)) (listing Hentges on the Commissioner's intended witness list). Moreover, that the Commissioner may need to bring some members of his staff to Oklahoma for trial does not alter this analysis. "The focus on this point is a qualitative, not a quantitative one and clearly is dependent on the factual and legal context of the particular case. Obviously, one important or material witness may outweigh a great number of less important witnesses." 15 Wright, et al., Federal Practice & Procedure § 3851.

The court has considered all the facts and circumstances of the case, the convenience of the parties and the potential witnesses, and the interest of justice. The court concludes that this dispute would best be resolved in the United States District Court for the Western District of Oklahoma.

### III.

Defendants' motion to transfer venue is GRANTED, and this action is hereby transferred to the United States District Court for the Western District of Oklahoma.

SO ORDERED. This 14 day of December 2007.

JAMES C. DEVER III
United States District Judge